IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MEL OWENS,

                Plaintiff,

v.

OMNI HOTELS MANAGEMENT
CORPORATION and JOHN DOE
CORPORATION,

                Defendants.

CIVIL ACTION NO.

1:11-cv-00699-TWT-RGV

## <u>ORDER FOR SERVICE OF</u><br><u>FINAL REPORT AND RECOMMENDATION</u>

Attached is the Final Report and Recommendation of the United States
Magistrate Judge made in this action in accordance with 28 U.S.C. § 636(b)(1), Fed.
R. Civ. P. 72(b), and this Court's Local Rule 72.1.  Let the same be filed and a copy,
together with a copy of this Order, be served upon counsel for the parties.

Pursuant to 28 U.S.C. § 636(b)(1), each party may file written objections, if any,
to the Report and Recommendation within fourteen (14) days of the receipt of this
Order.  Should objections be filed, they shall specify with particularity the alleged
error or errors made (including reference by page number to the transcript if
applicable) and shall be served upon the opposing party.  The party filing objections
will be responsible for obtaining and filing the transcript of any evidentiary hearing
for review by the district court.  If no objections are filed, the Report and

Recommendation may be adopted as the opinion and order of the district court and any appellate review of factual findings will be limited to a plain error review. United States v. Slay, 714 F.2d 1093 (11th Cir. 1983) (per curiam).

The Clerk is directed to submit the Report and Recommendation with objections, if any, to the district court after expiration of the above time period.

**IT IS SO ORDERED**, this 27th day of March, 2012.

_Russell G. Vineyard_
RUSSELL G. VINEYARD
UNITED STATES MAGISTRATE JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MEL OWENS,

         Plaintiff,

v.

OMNI HOTELS MANAGEMENT
CORPORATION and JOHN DOE
CORPORATION,

         Defendants.

CIVIL ACTION NO.

1:11-cv-00699-TWT-RGV

## MAGISTRATE JUDGE'S FINAL REPORT AND RECOMMENDATION

Defendant Omni Hotels Management Corporation ("Omni") moves for summary judgment in this action filed by plaintiff Mel Owens ("Owens"), alleging gender discrimination, sexual harassment, and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"), and intentional infliction of emotional distress. [Doc. 39]. Owens opposes Omni's motion for summary judgment. [Doc. 46]. For the reasons stated herein, it is **RECOMMENDED** that Omni's motion for summary judgment, [Doc. 39], be **GRANTED**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On March 7, 2011, Owens filed this action against his former employer Omni, a corporation which manages hotel operations at the CNN Center in Atlanta,

Georgia (the "Omni Hotel").[1]  [Doc. 1; Doc. 39-4 (Williams Aff.) ¶ 3].  Owens began

working for Omni at the Omni Hotel as an on-call banquet server in 2005.  [Doc. 39-4

¶ 4].[2]

While Owens worked for Omni, on-call banquet servers only worked for

events at the Omni Hotel on an as needed basis.  [Doc. 39-6 ¶ 3].  On-call banquet

servers were not guaranteed any work at all and were free to refuse to work when

called.  [Id. ¶ 4].  It was understood that on-call banquet servers also worked for

other banquet facilities in Atlanta in addition to working for Omni.  [Id. ¶ 5].  At the

time Owens worked for Omni, Omni maintained a top-ten list of on-call banquet

_____

[1] In accordance with Local Rule 56.1B(1), Omni submitted a statement of undisputed material facts, [Doc. 39-1], to which Owens responded, [Doc. 47].  The court accepts as true those facts which the parties admit or fail to properly deny.  LR 56.1B(2)a(2), NDGa.  To the extent that Owens attempted to deny facts from Omni's statement, he failed to comply with Local Rule 56.1B(2)a, in that his responses were not supported by citations to evidence.  Because these responses do not comport with the requirements of Local Rule 56.1B(2)a(2), the Court deems all Omni's undisputed material facts admitted.  Brandon v. Lockheed Martin Aeronautical Sys., 393 F. Supp. 2d 1341, 1348 (N.D. Ga. 2005), adopted at 1345 (holding pro se litigant to the procedural requirements of Local Rule 56.1).  However, the Court has disregarded those facts that are not material, are supported by a citation to a pleading rather than to evidence, or are stated as issues or legal conclusions, see LR 56.1B(1)-(2), NDGa., and the facts will be construed in the light most favorable to Owens as required on a motion for summary judgment, Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Knight v. Baptist Hosp. of Miami, Inc., 330 F.3d 1313, 1316 (11th Cir. 2003) (per curiam).

[2] During Owens' employment with Omni, Omni also employed full-time banquet servers, but Owens was never a full-time banquet server for Omni.  [Doc. 39-6 (Hines Aff.) ¶ 6].

servers who were called first for work if Omni needed more banquet servers than its full-time staff, but Owens was never on the top-ten list. [Id. ¶ 7]. Thus, Owens, like other regular on-call banquet servers, would only be called for an event at the Omni Hotel if Omni was unable to staff the event with personnel from its full-time staff combined with the top-ten list. [Id. ¶ 8]. When an event required regular on-call banquet servers beyond the top-ten list, Omni simply called servers on the on-call list until it filled the number of spots available. [Id. ¶ 9]. Servers on the list who did not answer the call or call back before the number needed was filled did not work the event. [Id.].

During the relevant time period, banquet servers for plated dinners (as opposed to receptions) would typically work four tables of ten in teams of two. [Id. ¶ 10]. The teams of two reported to a banquet captain, and there was typically one banquet captain per 200 plated dinner guests. [Id.]. The banquet captains reported to assistant banquet managers, who in turn reported to the banquet director. [Id.]. At the time Owens worked for Omni, Omni had about five or six banquet captains, including Bernard Guyton ("Guyton"), who began working for Omni in 2003. [Id. ¶ 11; Doc. 39-4 ¶ 31]. Owens viewed Guyton as "overbearing." [Doc. 41 (Owens Dep.) at 62, 68]. Guyton was supervised by Kelvin Hines ("Hines"). [Doc. 39-6 ¶ 12].

## A.    Owens' Initial Conflict with Guyton

Owens' first complaint about Guyton arose when Owens was sent home by Guyton before the end of a large event on September 19, 2008. [Doc. 41 at 61-69; Doc. 39-4 ¶ 5]. Owens alleges that he was paired that evening with a "weak" female server. [Doc. 41 at 67]. Although Guyton insisted that female servers needed to do the same things that the male servers did, Owens preferred to carry all the trays, with his female partner only serving plates. [Id.]. As a result of this disagreement and a verbal confrontation between Guyton and Owens, Guyton told Owens to sign out. [Id. at 66]. Afterwards, Owens lodged a complaint against Guyton, and he met with Human Resources Department Director Anittra Williams ("Williams") at the Omni Hotel the next day. [Id. at 72; Doc. 39-4 ¶ 6]. Owens' complaint did not allege any type of sexual harassment and was purely a work-related dispute. [Doc. 41 at 80; Doc. 39-4 ¶¶ 7-8]. At the meeting with Williams, Guyton said that Owens was sent home for being loud and uncooperative, although Owens maintained that he was sent home for no good reason. [Doc. 39-4 ¶ 8]. The meeting ended with both

parties shaking hands and regarding the matter as closed.[3]  [Doc. 41 at 72; Doc. 39-4 ¶ 6].

## B.    Owens' Reduced Hours

Owens testified that his hours at Omni declined for a while before "they picked back up again."  [Doc. 41 at 97].  Omni's banquet business was adversely affected by the economic events in the fall of 2008, and the total hours for the on-call servers for Omni plummeted with the economy.  [Doc. 39-4 ¶ 16].  According to Omni's records for the on-call banquet server category, the total hours for all such servers were 22,500.50 from September of 2007 to August of 2008, but declined to only 9, 678.50 for the period from September of 2008 to August of 2009, a decrease of about 57 percent.  [Id. ¶ 17; Doc. 39-5 at 1-72].  According to Omni's records, Owens' total hours were 682.25 from September of 2007 to August of 2008, but declined to only 287.75 from September of 2008 to August of 2009, a decrease of about 57.8 percent.  [Doc. 39-4 ¶ 18; Doc. 39-5 at 1-72].  The decrease in Owens' hours thus mirrored the decrease in total hours of work for on-call banquet servers.  [Doc. 39-4 ¶ 19; Doc. 39-5 at 1-72].

---

[3] Hines also reviewed this complaint about Guyton, wherein Owens alleged that he was given inappropriate job duties during the event.  [Doc. 39-6 ¶ 15].  Guyton told Hines that Owens had exploded in an unprofessional manner after being given a task.  [Id.].  After review, Hines determined that Guyton's job instructions to Owens were reasonable.  [Id.].

## C. Sexual Harassment Allegations[4]

Because Owens "wasn't getting any work,"[5] he complained about alleged former instances of sexual harassment. [Doc. 41 at 80]. Owens' allegations center on three separate events. First, on Thanksgiving of 2007, Owens was invited by Guyton to dine at Guyton's home, where he lived with his elderly mother. [Id. at 48-49]. Owens accepted the invitation, and dined with Guyton, his mother, and his sister. [Id.]. There was nothing unusual about the meal or the day. [Id.].

Some time after that, but before Christmas of 2007, Hines asked Owens if he could transport a bed from Guyton's residence to Hines' residence because Hines knew Owens had a truck. [Id. at 48, 50-54]. Owens drove to Guyton's residence where he and Guyton loaded the bed onto his truck. [Id. at 52]. While securing the

---

[4] When Owens was hired by Omni, he attended an orientation class. [Doc. 39-4 ¶ 20]. At this class, Owens received and reviewed a copy of Omni's Associate Handbook. [Doc. 41 at 116; Doc. 39-4 ¶ 21]. Owens read over the Associate Handbook, which contained Omni's policy prohibiting sexual harassment. [Doc. 41 at 114, 116 & Ex. 2; Doc. 39-4 ¶¶ 22-24; Doc. 39-5 at 73-75]. The policy also discusses Omni's procedures for investigating and handling allegations of sexual harassment, including disciplinary measures to stop the reoccurrence of any harassment found or any retaliation for such a complaint. [Doc. 39-4 ¶ 26]. Owens admitted that he felt completely comfortable approaching Hines and Omni Banquet Director John Kenny ("Kenny"), Guyton's superiors, with any kind of sexual harassment problem he might have experienced. [Doc. 41 at 43].

[5] Specifically, Owens testified that he was not called with the same frequency after his September 20, 2008, meeting with Human Resources, so he decided to report the other incidents that had previously occurred. [Doc. 41 at 74].

bed on his truck, Owens called Hines, but Guyton grabbed the phone from Owens, interrupting the call, and told Hines, "Hey look, both of y'all gots [sic] to give me some booty for this." [Id.]. Owens did not say anything in response, and does not know if Hines responded. [Id. at 52-53]. Instead, Owens brushed off the comment and "just ignored it," retrieving his phone and telling Hines that he was on his way. [Id. at 53-54]; see also [id. at 55 (stating that the statement was "no big thing" as there are "quite a few homosexuals" in the banquet business and "it's just part of life")]. Owens admits that Guyton did not touch him in any way at that time or make any other remark with any sexual connotation. [Id. at 54-55]. He did not report the comment to anyone at work. [Id. at 55].

Finally, Owens alleges that in January of 2008, Guyton grabbed and tweaked Owen's chest at work in front of others while he was giving last minute instructions about what to do on the floor. [Id.]. Guyton was laughing and joking while he did it. [Id. at 56]. About 40 minutes after the incident, Owens told Guyton never to "grab [his] titties" again, and Guyton said okay. [Id. at 59]. Once again, Owens did not report this incident to anyone. [Id. ("Naw. I mean, like I said, in this business, there are homo—one of—two out of five are homosexual in this business. And that's a large number. So you run into these people and, you know, you're working with them. And you have fun with it. They're good people.")]. Similarly, with respect

to Guyton's alleged jokes implying homosexual humor, Owens "just ignored them and ke[pt] on working." [Id. at 90 ("I could handle that. I've worked around homosexuals before. Not to say any of them did that in the past, but you ignore them.")].

Omni investigated these allegations in October of 2008 by interviewing identified witnesses. [Doc. 39-4 ¶¶ 10-11]. The witnesses' statements did not substantiate Owens' claims.[6] [Id.]. Nevertheless, Omni Banquet Director Kenny ensured that Owens never had Guyton as his banquet captain again. [Doc. 41 at 92; Doc. 39-4 ¶ 12]. Owens had no further problems with Guyton after complaining to Omni about the alleged sexual harassment, and Omni has no record of any other complaints of sexual harassment against Guyton. [Doc. 41 at 91-92, 97; Doc. 39-4 ¶ 13]. Owens remained on the on-call server list at Omni after his sexual harassment

_____

[6] Guyton and Hines both denied Owens' claims. [Doc. 39-4 ¶ 11; Doc. 39-6 ¶ 14]. Guyton not only denied any inappropriate behavior, but also denied that he was homosexual. [Doc. 39-4 ¶ 11; Doc. 39-6 ¶ 14]. Moreover, Hines testified that in his experience with Guyton, he was always professional. [Doc. 39-6 ¶ 13]. Hines never observed Guyton make sexual advances toward anyone on or off the job, tell sexual jokes, or otherwise sexually harass anyone in any way. [Id.]. In fact, Hines was unaware of any kind of sexual harassment complaint by Owens against Guyton until he was called into the Human Resources offices during the course of its investigation and questioned about it. [Id. ¶ 16]. Owens had not made any complaint to Hines about any alleged sexual harassment, and Hines had not heard or seen anything about it. [Id.].

complaint about Guyton, and continued to be called as part of that list just as he had been called before he made the complaint. [Doc. 39-6 ¶¶ 18-19].

## D. Equal Employment Opportunity Commission ("EEOC") Charge

On January 22, 2009, Owens filed a Charge of Discrimination ("charge") with the EEOC alleging sex discrimination and retaliation. [Id. ¶ 28]. The charge mentioned harassment in January of 2008 (presumably the chest tweaking incident), being subjected to sexual jokes, and being sent home because "my co-worker was not carry[ing] trays" in September of 2008. See [Doc. 41, Def.'s Ex. 6]. Owens also claimed that he was being discriminated against because he had worked only five days in November of 2008 and two days in January of 2009. [Id.].

## E. Owens' Termination

Plaintiff continued working for Omni for another 18 months after his sexual harassment complaint without incident. [Doc. 39-4 ¶ 14]. Then, in March of 2010, Owens was terminated after a co-worker discovered two bottles of liquor belonging to Omni in Owens' personal bag at the end of a shift. [Id.; Doc. 41 at 134-35]. Owens claims that the alcohol was in his bag because he had "to improvise on transporting those extra bottles without breaking them." [Doc. 41 at 128-29]. The responding security officer questioned Owens' veracity. [Doc. 39-7 (Sims Aff.) ¶ 15 ("Mr. Owens even started babbling evasively about things that had nothing to do with what he

was being questioned about.")].  As Owens' explanations for why he did not return the bottles at the inventory room along with the rest of the alcohol did not make sense, Omni terminated him.  [Doc. 39-4 ¶ 15].  Owens never amended his charge to include his termination, nor did the EEOC's investigation involve his termination.  [Id. ¶ 29].

## F.    Allegations

In the complaint before this Court, Owens alleges that he was discriminated against on the basis of his gender and retaliated against in violation of Title VII when he was sent home from the banquet in September of 2008, when his work hours were reduced, and when he was terminated.  See [Doc. 4 ¶¶ 36-37].  He also alleges that the sexual harassment he experienced created a hostile work environment in violation of Title VII.  [Id. ¶¶ 38-39].  Finally, Owens alleges that Omni's practices resulted in the common law tort of intentional infliction of emotional distress.  [Id. ¶ 40].

## II.  SUMMARY JUDGMENT STANDARD

In deciding a motion for summary judgment, the Court views all evidence in the light most favorable to and draws all reasonable inferences in the favor of the non-moving party.  Adickes, 398 U.S. at 157; Cargo v. Ala., Bd. of Pardons & Parole Div., 391 F. App'x 753, 754 (11th Cir. 2010) (per curiam) (unpublished); Knight, 330

F.3d at 1316. "Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law." McCurdy v. DeKalb Cnty., Civil Action File No. 1:09-CV-1989-TWT, 2010 WL 5101405, at *1 (N.D. Ga. Dec. 8, 2010) (citing Fed. R. Civ. P. 56(c)); see also Young v. FedEx Express, 432 F. App'x 915, 916 (11th Cir. 2011) (per curiam) (unpublished); Penley v. Eslinger, 605 F.3d 843, 848 (11th Cir. 2010). The party moving for summary judgment bears the initial burden of demonstrating the absence of any genuine issue of material facts, upon which the non-moving party must then submit specific facts showing a genuine issue for trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Bagwell v. Peachtree Doors & Windows, Inc., Civil Action No. 2:08–CV–0191–RWS-SSC, 2011 WL 1497831, at *10 (N.D. Ga. Feb. 8, 2011), adopted by 2011 WL 1497658, at *1 (N.D. Ga. Apr. 19, 2011); Premier Assocs., Inc. v. EXL Polymers, Inc., No. 1:08-cv-3490-WSD, 2010 WL 2838497, at *8 (N.D. Ga. July 19, 2010).

"[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." Jackson v. B&L Disposal, Inc., 425 F. App'x 819, 820 (11th Cir. 2011) (per curiam) (unpublished) (alteration in

original) (citation and internal marks omitted); <u>see also</u> <u>Shuler v. Ingram & Assocs.</u>, 441 F. App'x 712, 715 (11th Cir. 2011) (per curiam) (unpublished); <u>Bryant v. U.S. Steel Corp.</u>, 428 F. App'x 895, 897 (11th Cir. 2011) (per curiam) (unpublished). "Speculation or conjecture cannot create a genuine issue of material fact." <u>Shuler</u>, 441 F. App'x at 715 (citation omitted); <u>see also</u> <u>Howard v. Or. Television, Inc.</u>, 276 F. App'x 940, 941 (11th Cir. 2008) (per curiam) (unpublished) (emphasis, citation, and internal marks omitted) ("Speculation does not create a genuine issue of fact."); <u>Goodman v. Ga. Sw.</u>, 147 F. App'x 888, 891 (11th Cir. 2005) (per curiam) (unpublished) (citation and internal marks omitted) ("[A]ll reasonable inferences arising from the undisputed facts should be made in favor of the nonmovant, but an inference based on speculation and conjecture is not reasonable."). "Moreover, the non-moving party cannot create a genuine issue through evidence that is 'merely colorable' or 'not significantly probative.'" <u>Morales v. Ga. Dep't of Human Res.</u>, 446 F. App'x 179, 181 (11th Cir. 2011) (per curiam) (unpublished) (citation omitted). "But, [w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, summary judgment for the moving party is proper." <u>Premier Assocs., Inc.</u>, 2010 WL 2838497, at *9 (alteration in original) (citation and internal marks omitted).

## III.  DISCUSSION

**A.  Title VII Claims of Gender Discrimination, Retaliation, and Sexual Harassment**

### 1.  *Exhaustion of Administrative Remedies*

Omni contends that Owens' sexual harassment hostile work environment claim and retaliatory termination claim are time-barred because they were not the subject of a timely filed EEOC charge.[7]  [Doc. 39-2 at 12-14].  A plaintiff may not bring an action under Title VII "unless the alleged discrimination has been made the subject of a timely-filed EEOC charge."  Alexander v. Fulton Cnty., Ga., 207 F.3d 1303, 1332 (11th Cir. 2000), overruled on other grounds by Manders v. Lee, 338 F.3d 1304, 1328 n.52 (11th Cir. 2003) (citing 42 U.S.C. § 2000e-5); see also Wilkerson v. Grinnell Corp., 270 F.3d 1314, 1317 (11th Cir. 2001) ("Before a plaintiff may sue for discrimination under Title VII, [he] must first exhaust [his] administrative remedies.").  To be timely, an EEOC charge must be filed within 180 days after the alleged unlawful employment practice occurred.  Alexander, 207 F.3d at 1332.  In the Eleventh Circuit, "[e]ven though the filing requirements are not jurisdictional in nature, they are necessary prerequisites–conditions precedent–to filing a claim in

---

[7] Omni apparently concedes Owens' gender discrimination and retaliation claims based upon the tray-carrying incident in September of 2008 and the reduction of his hours in late 2008  are properly before the Court as they were made the subject of a timely EEOC complaint on January 22, 2009.  See [Doc. 41, Def.'s Ex. 6].

federal court." Watson v. Republic Airlines, Inc., 553 F. Supp. 939, 943 (N.D. Ga. 1982) (citing Jackson v. Seaboard Coast Line R.R., 678 F.2d 992, 1009-10 (11th Cir. 1982); Pinkard v. Pullman-Standard, a Div. of Pullman, Inc., 678 F.2d 1211, 1216 (11th Cir. 1982) (per curiam)). When a defendant disputes that a plaintiff has exhausted administrative remedies or denies that the plaintiff has fulfilled the preconditions to suit, the "plaintiff then bears the burden of proving that the conditions precedent . . . have been satisfied." Jackson, 678 F.2d at 1010 (citations omitted).

Owens filed his charge with the EEOC on January 22, 2009. See [Doc. 41, Def.'s Ex. 6]. Thus, the charge was timely only with respect to events occurring between July 26, 2008, and January 22, 2009. See Alexander, 207 F.3d at 1332. Two of the specific incidents of alleged sexual harassment identified by Owens, the "booty" phone call and the chest tweaking incident, both occurred outside this time frame, and Omni contends that his EEOC charge thus was untimely. See [Doc. 39-2 at 12-14]. However, "[a] charge alleging a hostile work environment claim . . . will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 122 (2002). Owens' EEOC charge alleged that continuing discriminatory action occurred between January and September of 2008, and that after the chest tweaking incident, Guyton harassed him

and subjected him to sexual jokes.  See [Doc. 41, Def.'s Ex. 6].  The record includes

evidence that Owens, who felt threatened by Guyton and did not wish to associate

with him for fear that he would be subjected to homosexual advances or considered

to be homosexual by his co-workers, experienced specific events in September of

2008 in which Guyton allegedly approached him and would not leave him alone

despite his repeated requests and he was "still getting homosexual jokes" at that

time.  See [id. at 84-88 & Def.'s Ex. 1].  Accordingly, when viewed in the light most

favorable to Owens, there is evidence that some part of the alleged unlawful

employment practice occurred during the time period for which a timely EEOC

charge was filed, and Owens has thus exhausted his remedies with respect to his

hostile work environment sexual harassment claim.

Moreover, to the extent that Owens' complaint alleges retaliatory termination

for filing his EEOC charge,[8] his claim is properly before the Court.   Obviously,

Owens' EEOC charge, filed more than a year before he was terminated, contains no

mention of any alleged retaliatory termination.  See [id., Def.'s Ex. 6].  However, a

_____

[8] During his deposition, Owens indicated that he did not regard his termination as being part of this action, asking "What does [my termination] have to do with sexual harassment?"  [Doc. 41 at 139].  When Omni's counsel sought clarification, Owens confirmed that "this whole termination thing" had nothing to do with his allegations.  [Id.].  When counsel stated "If it's not part of the lawsuit and not part of the discrimination case, then we don't need to deal with it.  Just leave it there," and Owens responded, "Okay."  [Id. at 140].

Title VII action is not limited to the verbatim accusation the EEOC charge contains, but is instead limited in scope to the EEOC investigation that can reasonably be expected to grow out of the explicit accusations in the charge. Anderson v. Dunbar Armored, Inc., 678 F. Supp. 2d 1280, 1303 (N.D. Ga. 2009), adopted at 1290. The Eleventh Circuit has ruled that a retaliation claim can reasonably be expected to grow out of an original charge of discrimination, Baker v. Buckeye Cellulose Corp., 856 F.2d 167, 169 (11th Cir. 1988), and "it is unnecessary for a plaintiff to exhaust administrative remedies prior to urging a retaliation claim growing out of an earlier charge; the district court has ancillary jurisdiction to hear such a claim when it grows out of an administrative charge that is properly before the court," Gupta v. E. Tex. State Univ., 654 F.2d 411, 414 (5th Cir. Unit A Aug. 1981).[9] Thus, to the extent Owens asserts a retaliatory termination claim, it is properly before this Court.[10]

_____

[9] Decisions of the Fifth Circuit rendered before October 1, 1981, are binding upon panels of the Eleventh Circuit. Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

[10] Although Omni asserts that Owens did not exhaust his administrative remedies because the actual EEOC investigation did not inquire into the circumstances surrounding Owens' termination, see [Doc. 39-4 ¶ 29], the standard is whether the EEOC charge alleges facts such that a *reasonable* EEOC investigation would encompass plaintiff's claim, see Freeman v. Koch Foods of Al., 777 F. Supp. 2d 1264, 1277-78 (M.D. Ala. 2011). As the Eleventh Circuit has explicitly held that a reasonable EEOC investigation would encompass claims of retaliatory termination where discrimination was alleged, Baker, 856 F.2d at 169, and courts are "extremely reluctant to allow procedural technicalities to bar claims brought under [Title VII]," Gregory v. Ga. Dep't of Human Res., 355 F.3d 1277, 1280 (11th Cir. 2004) (per

16

## 2. *Merits of Owens' Discrimination and Retaliation Claims*

Title VII makes it unlawful for a covered employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Title VII also provides that it is "an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment" because the employee has opposed unlawful discrimination by his employer or "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" concerning unlawful discrimination by his employer.[11] 42 U.S.C. § 2000e-3(a).

Where, as here, there is no direct evidence of discrimination or retaliation, the Court evaluates a Title VII claim by using the burden-shifting framework articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Burke-Fowler v. Orange Cnty., Fla., 447 F.3d 1319, 1323 (11th Cir. 2006) (per curiam). Under this framework,

---

curiam) (alteration in original) (citation and internal marks omitted), this fact is irrelevant and Owens' retaliation claim is properly before this Court, see Thomas v. Miami Dade Public Health Trust, 369 F. App'x 19, 23 (11th Cir. 2010) (per curiam) (unpublished).

[11] These two prohibitions on retaliation are generally known as the opposition clause and the participation clause, respectively. EEOC v. Total Sys. Servs., Inc., 221 F.3d 1171, 1174 (11th Cir. 2000); Enadeghe v. Ryla Teleservices, Inc., Civil Action File No. 1:08-CV-3551-TWT, 2010 WL 481210, at *8 (N.D. Ga. Feb. 3, 2010), adopted at *1 (citation and internal marks omitted).

Owens must first present a *prima facie* case, and if successful, the burden shifts to Omni to articulate legitimate, non-discriminatory and non-retaliatory reasons for its actions. Berman v. Orkin Exterminating Co., 160 F.3d 697, 701 (11th Cir. 1998); see also Entrekin v. City of Panama City Fla., 376 F. App'x 987, 997 (11th Cir. 2010) (per curiam) (unpublished). This burden is "exceedingly light." Holifield v. Reno, 115 F.3d 1555, 1564 (11th Cir. 1997) (per curiam) (citation and internal marks omitted). If Omni meets its burden of production, the inference of discrimination and retaliation is erased, and the burden shifts back to Owens to show that Omni's articulated reasons are merely a pretext for discrimination or retaliation. Entrekin, 376 F. App'x at 997; Berman, 160 F.3d at 702. Despite this burden-shifting framework, the "ultimate burden of persuading the trier of fact that [Omni] intentionally [discriminated or retaliated] against [Owens] remains at all times with [Owens]." See Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981).

### a. Gender Discrimination Claim

To establish a *prima facie* case of discrimination under Title VII, Owens must demonstrate that (1) he is a member of a protected class; (2) he was qualified for the job or job benefit at issue; (3) he was subjected to an adverse job action; and (4) his employer treated similarly situated employees outside of his class more favorably. Burke-Fowler, 447 F.3d at 1323; Rice-Lamar v. City of Ft. Lauderdale, Fla., 232 F.3d

836, 842-43 (11th Cir. 2000). "Demonstrating a prima facie case is not onerous; it requires only that the plaintiff establish facts adequate to permit an inference of discrimination." Holifield, 115 F.3d at 1562 (citations omitted); see also Burdine, 450 U.S. at 253-54.

Even assuming that sufficient record evidence exists to establish that Owens is a member of a protected class, was qualified for the job at issue, and suffered an adverse employment action,[12] Owens has failed to identify any similarly situated female employee who was treated more favorably than he was. See Burke-Fowler,

---

[12] "[T]o prove adverse employment action in a case under Title VII's anti-discrimination clause, an employee must show a *serious and material* change in the terms, conditions, or privileges of employment." Davis v. Town of Lake Park, Fla., 245 F.3d 1232, 1239 (11th Cir. 2001); Jackson v. Blue Cross & Blue Shield of Ga. Inc., No. 4:09-CV-19 (CDL), 2010 WL 3062437, at *9 (M.D. Ga. Aug. 2, 2010). Accordingly, for the purposes of this motion, the Court presumes that each incident identified by Owens–being sent home early on September 19, 2008, after disagreeing with Guyton's instructions regarding female servers carrying trays, [Doc. 41 at 61-69; Doc. 39-4 ¶ 5; Doc. 46-1 ¶ 24 (Owens Aff.) (establishing that Owens was paid by the hour)], having his hours reduced, [Doc. 41 at 97], and being terminated in March of 2010, [Doc. 49 at 134-35]-constitutes an adverse employment action, see Crawford v. Carroll, 529 F.3d 961, 970 (11th Cir. 2008) (holding that "adverse employment action" includes "termination, failure to hire, or demotion"). However, there is no evidence that Guyton's alleged sexual harassment had any effect on Owen's pay, benefits, or other tangible aspects of his employment, and it therefore cannot be considered as an independent adverse action forming the basis of a discrimination claim. Guido v. City of Crystal River, Fla., No. 5:03-CV-231-OC-10GRJ, 2006 WL 1232815, at *6 (M.D. Fla. May 8, 2006) (finding that harassment was not sufficiently serious and material to constitute an adverse employment action because the acts had no effect on plaintiff's pay, benefits, or other tangible aspects of her employment).

447 F.3d at 1323; see also Anderson, 678 F. Supp. 2d at 1314 ("In order to establish the similar comparator element, the plaintiff and the employee [he] identifies as a comparator must be similarly situated in all relevant respects. . . . The comparator must be nearly identical to the plaintiff to prevent courts from second-guessing a reasonable decision by the employer."). Owens has not brought forth evidence that any female on-call banquet servers were not similarly disciplined after engaging in verbal confrontations with their banquet captains, did not suffer reduced hours during the economic downturn, or were not fired after being accused of stealing alcohol from the hotel.[13] Accordingly, as no other evidence of discrimination is present and Owens has failed to "show the existence of a similarly situated employee, summary judgment is appropriate," Anderson, 678 F. Supp. 2d at 1314

---

[13] Owens did testify that Pachonca, a now-deceased female server from Bulgaria, continued to call him and tell him that she was still getting shifts during the economic downturn. See [Doc. 41 at 92-93]. However, Owens also testified that "Jay" and "Edwin," male servers, also continued to get work during this time, indicating that his reduced hours were not the result of gender discrimination. See [Id. at 95]. Furthermore, Owens has submitted no corroborating evidence or details in support of his self-serving testimony regarding Pachonca's work schedule, and his testimony is therefore insufficient on its own to create a genuine issue of material fact regarding this element of a *prima facie* gender discrimination case. See Wallace v. Teledyne Continental Motors, 138 F. App'x 139, 143 (11th Cir. 2005) (per curiam) (unpublished); Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991) (stating that evidence consisting of conclusory allegations does not defeat summary judgment); Evers v. Gen. Motors Corp., 770 F.2d 984, 986 (11th Cir. 1985) (citations omitted) ("[C]onclusory allegations without specific supporting facts have no probative value.").

(emphasis, citations, and internal marks omitted), and it is **RECOMMENDED** that Omni's motion for summary judgment be **GRANTED** with respect to Owens' gender discrimination claim.

### b. Retaliation Claim

To establish a *prima facie* case of retaliation under Title VII, Owens must show that (1) he engaged in statutorily protected activity; (2) he suffered an adverse action;[14] and (3) the adverse action was caused by his engaging in protected activity. Crawford, 529 F.3d at 970; Gregory, 355 F.3d at 1279; Whitner v. Emory Univ., Civil Action File No. 1:06-CV-1518-TWT, 2008 WL 4224407, at *19 (N.D. Ga. Sept. 12, 2008), adopted in part at *1. Omni contends that Owens cannot show that any protected activity he engaged in was causally connected to an adverse action. [Doc. 39-2 at 17-19].

A plaintiff can demonstrate the causal connection requisite for the *prima facie* case by showing that the protected activity and the adverse action are not wholly unrelated. Berman, 160 F.3d at 701. The causal connection may be established either

---

[14] Under Title VII's retaliation provision, an adverse action is any action that would "likely have dissuaded a reasonable worker from making or supporting a charge of discrimination." See Burlington N. & Sante Fe Ry. Co. v. White, 548 U.S. 53, 60-61, 64-65 (2006) (citations and internal marks omitted). Accordingly, being sent home early (which resulted in lost hourly wages), receiving reduced hours, being sexually harassed, and being terminated all qualify as adverse actions for the purposes of Owens' retaliation claim. See, e.g., Arnold v. City of Columbus, No. 2:08-cv-0031, 2011 WL 1303593, at *23 (S.D. Ohio Mar. 31, 2011) (citations omitted).

through direct evidence of retaliatory animus, or by circumstantial evidence, including a showing that Owens suffered the adverse actions shortly after he engaged in the protected activity. See Sumner v. U.S. Postal Serv., 899 F.2d 203, 209 (2d Cir. 1990); Soloski v. Adams, 600 F. Supp. 2d 1276, 1362 (N.D. Ga. 2009), adopted at 1322 (citations omitted). "If temporal proximity, however, is the only evidence of causation to support the logical inference that the two events were related, the challenged decision must follow almost immediately after the protected expression to support the logical inference that the two events were related." Soloski, 600 F. Supp. 2d at 1363 (citing Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001)); see Summers v. Winter, 303 F. App'x 716, 720 (11th Cir. 2008) (per curiam) (unpublished) (citation omitted) (holding that, without more, "a time gap of three months or more does not establish a causal connection"). "At a minimum, a plaintiff must generally establish that the employer was actually aware of the protected expression at the time it took adverse employment action." Goldsmith v. City of Atmore, 996 F.2d 1155, 1163 (11th Cir. 1993) (citations omitted).

The record evidence shows that Owens engaged in protected activity when he complained to Omni about gender discrimination sometime in October of 2008 and when he filed his complaint with the EEOC in January of 2009. See [Doc. 41 at 80 & Def.'s Exs. 1 at 4, 6; Doc. 39-4 ¶¶ 10-11, 28]. Given the timing of his protected

activity, Owens is unable to establish a retaliation claim based on the fact that Guyton sent him home early from the banquet on September 19, 2008, or based on any of the alleged sexual harassment he suffered, see [Doc. 41 at 48-69], as these events occurred before he had engaged in any protected activity, see Long v. Russell Cnty. Comm'n, Nos. 3:09-CV-90-WKW [WO], 3:09-CV-96-WKW [WO], 2010 WL 5291603, at *18 (M.D. Ala. Dec. 27, 2010) (citation omitted) (stating that a retaliation claim could not be based on protected activity occurring after the adverse action took place).  Moreover, to the extent Owens asserts that his termination is part of this case,[15] he is unable to use that event as the basis of his retaliation claim since he has not submitted any other evidence of causation and he was not terminated until March of 2010, well over one year after he last engaged in protected activity by filing his EEOC charge.  [Doc. 39-4 ¶¶ 14, 28; Doc. 41 at 134-35 & Def.'s Ex. 6]; see also Summers, 303 F. App'x at 720.  Thus, Omni's motion for summary judgment is due to be granted with respect to any retaliation claims based on Owens being sent home early in September of 2008, being sexually harassed, or being terminated.

Moreover, although Owens suffered reductions in his hours in close temporal proximity to his complaints about gender discrimination and sexual harassment, see [Doc. 41 at 97; Doc. 39-4 ¶ 18; Doc. 39-5 at 1-72], Owens' hours were first reduced

---

[15] As previously noted, Owens testified that his termination was not part of this action.  [Doc. 41 at 139].

before he engaged in any protected activity, <u>see</u> [Doc. 41 at 80 (Owens testifying that he complained about discrimination and harassment only after he noticed a reduction in his hours)]. "While close proximity in time will suffice to establish causation, where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise." <u>Avillan v. Potter</u>, No. 04 Civ. 9019(PKC) (FM), 2006 WL 3103309, at *18 (S.D.N.Y. Nov. 1, 2006) (<u>citing</u> <u>Slattery v. Swiss Reinsurance Am. Corp.</u>, 248 F.3d 87, 95 (2d Cir. 2001)); <u>see also</u> <u>Hall v. AT&T Mobility Servs., LLC</u>, No. 6:10-cv-150-Orl-28DAB, 2011 WL 3425642, at *10 (M.D. Fla. Aug. 5, 2011) (<u>citing</u> <u>Spence v. Panasonic Copier Co.</u>, 46 F. Supp. 2d 1340, 1348-49 (N.D. Ga. 1999) (collecting cases)) (cautioning courts against making an inference of causation where an adverse action has already been initiated at the time a plaintiff engaged in protected activity); <u>Dowlatpanah v. Wellstar Douglas Hosp.</u>, 2006 WL 4093123, at *15 (N.D. Ga. Dec. 5, 2006). As Owens has presented no other evidence of causation, and the adverse action of which he complains began before he engaged in protected activity, he has failed to establish the causation element of his *prima facie* case and it is **RECOMMENDED** that Omni's motion for summary judgment be **GRANTED** with respect to Owens' retaliation claims. <u>See</u> <u>Hewlett v. Waffle House, Inc.</u>, No. 3:04-CV-111(CDL), 2006 WL 1582423, at *5 (M.D. Ga. June 5, 2006) (<u>citing</u>

Cotton v. Cracker Barrel Old Country Store, Inc., 434 F.3d 1227, 1232 (11th Cir. 2006) (finding that plaintiff failed to establish causation where hours were initially reduced before he engaged in any protected activity)).

### c.   Legitimate, non-discriminatory and non-retaliatory reasons and pretext

Even assuming that Owens could establish a *prima facie* case of either gender discrimination or retaliation, Omni's motion for summary judgment is due to be granted because Owens has not shown that Omni's legitimate non-discriminatory and non-retaliatory reasons for the adverse actions he suffered are pretextual. Omni contends that Owens was sent home early on September 19, 2008, because he got into a verbal altercation with Guyton, his banquet captain, [Doc. 39-2 at 18], that Owens' hours were reduced because of hardship in the economy that resulted in an overall reduction of available on-call work, see [id. at 19], and that Owens was terminated because he was caught trying to steal alcohol from the hotel, [id. at 7-9]. Because Omni has articulated legitimate non-discriminatory and non-retaliatory reasons for the adverse actions,[16] the burden shifts back to Owens to show that the

---

[16] See Short v. Mando Am. Corp., 805 F. Supp. 2d 1246, 1273 n.18 (M.D. Ala. 2011) (identifying general economic downturn as a legitimate non-discriminatory reason); Sullivan v. City of Satsuma, No. Civ. A. 040473WSM, 2005 WL 2206222, at *12 (S.D. Ala. Sept. 9, 2005) (identifying a verbal altercation with a supervisor as a legitimate non-retaliatory reason to take adverse action); Prince v. United Parcel Serv., 845 F. Supp. 835, 837, 842 (M.D. Ala. 1993) (finding employer's termination of employee for allegedly stealing constituted a legitimate nondiscriminatory reason

reasons provided by Omni are a pretext for prohibited conduct. <u>Olmsted v. Taco Bell Corp.</u>, 141 F.3d 1457, 1460 (11th Cir. 1998).

"To establish pretext, [Owens] must present concrete evidence in the form of specific facts showing that [Omni's] proffered reason[s were] pretextual." <u>Bryant v. Averitt Express, Inc.</u>, 375 F. App'x 942, 943 (11th Cir. 2010) (per curiam) (unpublished) (citations and internal marks omitted). "Ultimately, an employee must meet the employer's stated reason 'head on and rebut it, and he cannot succeed by simply quarreling with the wisdom of that reason.'" <u>Young</u>, 432 F. App'x at 917 (citation omitted). In order to directly attack Omni's reasons, Owens must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the employer's proffered legitimate reasons for its action that "a reasonable factfinder could find them unworthy of credence." <u>Cooper v. S. Co.</u>, 390 F.3d 695, 725 (11th Cir. 2004), <u>overruling on other grounds recognized</u> by <u>Andrews-Willmann v. Paulson</u>, 287 F. App'x 741 (11th Cir. 2008) (per curiam) (unpublished) (<u>quoting</u> <u>Combs v. Plantation Patterns</u>, 106 F.3d 1519, 1538 (11th Cir. 1997)). The relevant inquiry in evaluating pretext evidence is not "whether the employer's determination was correct, but whether it constitutes an 'honest explanation' for [the retaliatory or adverse action]." <u>Lowry v. Regis Salons Corp.</u>, No. 1:05-cv-1970-WSD,

_____

for the employer's action).

2006 WL 2583224, at *19 (N.D. Ga. Sept. 6, 2006), adopted at *3 (citing Chapman v. AI Trans., 229 F.3d 1012, 1030 (11th Cir. 2000)). "Pretext means more than a mistake on the part of the employer; pretext means a lie, specifically a phony reason for some action." Tolley v. United Parcel Serv., No. Civ.A.1:05CV606TWT, 2006 WL 486523, at *5 (N.D. Ga. Feb. 27, 2006) (citations and internal marks omitted). "Thus, the inquiry is limited to whether the employer offered an honest, [non-retaliatory and non-discriminatory] explanation for [the alleged retaliatory and discriminatory action], regardless of whether the decision might have been mistaken." Id. (citations omitted).

Owens has not presented any evidence to rebut Omni's legitimate non-discriminatory and non-retaliatory reasons for its actions. See generally [Doc. 46]; see also Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1471 (11th Cir. 1991) (third and fourth alterations in original) (citation and internal marks omitted) ("Conclusory allegations of discrimination [or retaliation], without more, are not sufficient to raise an inference of pretext or intentional discrimination [or retaliation] where [an employer] has offered . . . extensive evidence of legitimate, non-discriminatory [and non-retaliatory] reasons for its action[s]."). Owens has offered no facts or argument to rebut Omni's assertion that he was sent home early on September 19, 2008, for disagreeing with his banquet captain, or to rebut the assertion that his hours were

reduced when all on-call work suffered due to the downturn in the economy.[17] See generally [Doc. 46]. Although Owen's asserts that Omni's decision to terminate him was pretext because the Georgia Department of Labor determined that the theft accusation was unfounded,[18] see [id. at 6], it is not enough to show that Omni's decision to terminate him was mistaken because he was not in fact trying to steal alcohol, see Tolley, 2006 WL 486523, at *5 (citation omitted). Instead of merely showing that the employer's decision was mistaken, Owens must show that the employer's justification was dishonest and phony, see Lowry, 2006 WL 2583224, at *19, and Owens has pointed to no evidence tending to show that Omni fired him on the basis of anything other than its honest belief that he had tried to steal alcohol.[19]

---

[17] As previously mentioned, Owens' deposition contains testimony describing conversations he had with Pachonca, a now-deceased female server from Bulgaria, who told him that she was still getting shifts during the economic downturn. See [Doc. 41 at 92-93]. However, this allegation fails to establish pretext because it is "based on his own perceptions and do[es] not cast doubt on [Omni's] articulated reason." Otu v. Papa John's USA, Inc. 400 F. Supp. 2d 1315, 1335 (N.D. Ga. 2005), adopted at 1318. Owens' speculative testimony about how many shifts he believes that Pachonca or other servers worked, see [Doc. 41 at 95], is therefore insufficient to create a genuine issue of material fact or carry his burden as to pretext. See Shuler, 441 F. App'x at 715 (citation omitted); see also Howard, 276 F. App'x at 941 (emphasis, citation, and internal marks omitted) ("Speculation does not create a genuine issue of fact.").

[18] No documents from this hearing are in evidence before the Court.

[19] Indeed, as previously mentioned, when asked about his termination, Owens explicitly testified that it was not even part of this case. See [Doc. 41 at 139].

Thus, not only has Owens failed to present evidence establishing a *prima facie* case with respect to his gender discrimination and retaliations claims, but he has also failed to meet Omni's legitimate non-retaliatory and non-discriminatory justifications for its actions head on and rebut them, see Young, 432 F. App'x at 917, and Omni's motion for summary judgment is therefore due to be granted with respect to Owens' Title VII discrimination and retaliation claims.

### 3. *Merits of Owen's Sexual Harassment Claim*

"Title VII prohibits sex-based discrimination that alters the terms and conditions of employment." Nurse "BE" v. Columbia Palms W. Hosp. Ltd. P'ship, 490 F.3d 1302, 1308 (11th Cir. 2007). "In order to establish a *prima facie* case of hostile work environment sexual harassment, [Owens] must show: (1) he belongs to a protected group; (2) he was subjected to unwelcome sexual harassment; (3) the harassment complained of was based upon his sex;[20] (4) the harassment complained

_____

[20] "Sex discrimination consisting of same-sex sexual harassment is actionable under Title VII," Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 82 (1998), provided that Owens shows the harassment was "based upon sex," by presenting evidence that (1) the harasser had a sexual desire for the plaintiff, (2) the harasser had a general hostility towards individuals of his or her own sex in the workplace, or (3) the harasser treated members of both sexes differently in the workplace, EEOC v. Family Dollar Stores, Inc., Civil Action File No. 1:06-CV-2569, 2008 WL 4098723, at *12 (N.D. Ga. Aug. 28, 2008), adopted at *1 (citations omitted); see also Oncale, 523 U.S. at 80. Although Guyton denies that he is homosexual, see [Doc. 39-4 ¶11; Doc. 39-6 ¶ 14], the record contains some evidence that Guyton requested sex from Hines and Owens in the "booty" phone call and that other individuals working for Omni believed Guyton was gay, see [Doc. 41 at 50-54, 74-78 & Def.'s Ex. 1 at 4 (Owens'

of was sufficiently severe or pervasive to alter the terms and conditions of employment; and (5) the employer 'knew or should have known of the harassing conduct but failed to take prompt remedial action.'" Smith v. Pefanis 652 F. Supp. 2d 1308, 1324 (N.D. Ga. 2009), adopted at 1316 (footnoted added) (citations omitted); see also Bruno v. Monroe Cnty., 383 F. App'x 845, 847-48 (11th Cir. 2010) (per curiam) (unpublished) (citation omitted); Criswell v. Intellirisk Mgmt. Corp., 286 F. App'x 660, 661-62 (11th Cir. 2008) (per curiam) (unpublished); Jones v. City of Lakeland, 318 F. App'x 730, 735 (11th Cir. 2008) (per curiam) (unpublished). Omni asserts that Owens' claim fails because he cannot show that any alleged sexual harassment was severe or pervasive enough to alter the terms and conditions of his employment. [Doc. 39-2 at 19-23].

The Eleventh Circuit has noted that the "severe or pervasive" requirement "tests the mettle of most sexual harassment claims." Gupta v. Fla. Bd. of Regents, 212 F.3d 571, 583 (11th Cir. 2000), abrogated on other grounds as recognized by Crawford, 529 F.3d at 974 (citation omitted). "And, to be actionable under the

---

letter relating a conversation with J. Moore ("Moore") about how Moore had to stop associating with Guyton because others would think he, like Guyton, was gay)]. For the purposes of this summary judgment motion, the Court presumes that this evidence is sufficient, when viewed in the light most favorable to Owens, to establish a genuine question of material fact regarding whether the harassment was based upon Owens' sex. See Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275, 1278 (11th Cir. 2002).

statute, the Supreme Court has 'made it clear that [the] conduct must be extreme.'" Banks v. San-J Int'l, No. Civ.A. 3:00CV184, 2001 WL 34056053, at *3 (E.D. Va. Jan. 18, 2001) (alteration in original) (quoting Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998)).

"Whether harassing conduct is sufficiently severe or pervasive to alter the terms and conditions of a plaintiff's employment includes an objective and a subjective component." Blackmon v. Wal-Mart Stores E., L.P., 358 F. App'x 101, 102 (11th Cir. 2009) (per curiam) (unpublished) (citation omitted); see also Faragher, 524 U.S. at 787; Parker v. Atlanta Newspapers Name Holding Corp., No. 05-15722, 2006 WL 1594427, at *2 (11th Cir. June 12, 2006) (per curiam) (unpublished); Mendoza v. Borden, Inc., 195 F.3d 1238, 1246 (11th Cir. 1999). "The plaintiff must subjectively perceive the environment to be abusive, and the conduct must be severe or pervasive enough to create an objectively hostile or abusive work environment." Blackmon, 358 F. App'x at 102 (citation omitted). "This 'inquiry requires careful consideration of the social context in which particular behavior occurs and is experienced by its target.'" Wilborn v. S. Union State Cmty. Coll., Civil Action No. 3:08cv928-MHT, 2010 WL 1294131, at *14 (M.D. Ala. Mar. 30, 2010) (quoting Oncale, 523 U.S. at 81). "Common sense, and an appropriate sensitivity to social context, will enable courts and juries to distinguish between teasing . . . and conduct which a reasonable person

in the plaintiff's position would find severely hostile or abusive.  Id. (alteration in original) (citation and internal marks omitted).

The Eleventh Circuit has identified the following factors that should be considered in the "severe and pervasive" analysis: "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." Mendoza, 195 F.3d at 1246 (citation omitted); Blackmon, 358 F. App'x at 102-03 (citation omitted).  Proof is not required on each factor individually as the Court must consider the totality of the circumstances.  Hulsey v. Pride Rests., LLC, 367 F.3d 1238, 1248 (11th Cir. 2004); see also Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993); Dar Dar v. Associated Outdoor Club, Inc., 201 F. App'x 718, 721 (11th Cir. 2006) (per curiam) (unpublished).  "Although [the Eleventh Circuit] examine[s] the statements and conduct complained of collectively to determine whether they were sufficiently pervasive or severe to constitute sexual harassment, the statements and conduct must be of a sexual or gender-related nature . . . before they are considered in determining whether the severe or pervasive requirement is met." Gupta, 212 F.3d at 583 (internal citations omitted).

Owens has presented evidence of only two events where Guyton's statements or conduct were sexual or gender-related in nature: the "booty" phone call that occurred between Thanksgiving and Christmas of 2007 and Guyton's tweaking of his chest in January of 2008.[21] See [Doc. 41 at 50-60]. However, these two isolated incidents are not sufficiently severe or pervasive to be actionable under Title VII, see Breda v. Wolf Camera, Inc., 148 F. Supp. 2d 1371, 1376 (S.D. Ga. 2001) (internal marks omitted) (quoting Oncale, 523 U.S. at 81) ("This [severity and pervasiveness] requirement is regarded 'as crucial, and as sufficient to ensure that courts and juries do not mistake ordinary socializing in the workplace – such as male-on-male horseplay or intersexual flirtation – for discriminatory conditions of employment.'"). Since Title VII "is not a federal civility code," id. (quoting Mendoza, 195 F.3d at 1245), and "'simple teasing,' offhand comments, and isolated incidents (unless

_____

[21] Although Owens also alleges that Guyton invited him to Thanksgiving dinner, Owens admits this meal was "nothing unusual," and there are no allegations that anything at this event was sexual in nature. See [Doc. 41 at 49]. Furthermore, although Owens asserts that there were other instances where Guyton followed him around or would not leave him alone, causing Owens to be concerned that others would think he was homosexual, see [id., Def.'s Ex. 1; Doc. 46 at 2 (describing "awkward long stare[s]" and Guyton's "unusual, uncomfortable, and unrealistic interest" in Owens' work)], any such "flirtation is not sexual harassment," Gupta, 212 F.3d at 584; see also Moran v. Fashion Inst. of Tech., No. 00 CIV. 1275(KMW)(RL, 2002 WL 31288272, at *6 (S.D.N.Y. Oct. 7, 2002) ("[E]xcessive attention, physical proximity, or touching a person briefly in conversation is not inherently sexual."). Accordingly, this conduct will not be considered in determining whether the severe or pervasive requirement is met. See Gupta, 212 F.3d at 583.

extremely serious)" do not amount to a hostile work environment, <u>Faragher</u>, 524 U.S. at 788 (citations omitted), Owens' allegations fall far short of the type of objectively severe and pervasive activity required for a hostile work environment claim based on sexual harassment to survive summary judgment. <u>Cf.</u> <u>Cox v. Denny's Inc.</u>, No. 98-1085-CIV-J-16B, 1999 WL 1317785, at *3-4 (M.D. Fla. Dec. 22, 1999) (citations omitted) (finding that one isolated incident where a supervisor touched his employee's breasts and crotch in an unconfined area and which was not repeated when the employee indicated that contact was unwanted coupled with one other "boorish" incident where the supervisor grabbed his own crotch was insufficient to give rise to an actionable hostile work environment claim); <u>see also</u> <u>Yamaguchi v. U.S. Dep't of the Air Force</u>, 109 F.3d 1475, 1478 (9th Cir. 1997) (finding allegations sufficient to support hostile work environment claim where the harasser not only "stare[d] at [plaintiff] during work" and made "inappropriate jokes and comments" but also "sen[t] [plaintiff] unwanted notes, gifts and e-mail messages," attempted to kiss her, made "sexual gestures and remarks about her body, perfume, and clothing and about other women in the workplace," came to plaintiff's apartment and "allegedly tied her up, gagged her and raped her" ).

Moreover, Owens specifically testified that any comments Guyton made or alleged harassment he suffered did not subjectively interfere with his ability to

work.[22]  See [Doc. 41 at 53-55 (Owens testifying that he "just ignored" Guyton's "booty" comment and it was "no big thing" and "it's just a part of life"), 59 (stating with respect to Guyton tweaking his chest that it was part of the business because "one of–two out of five are homosexual in this business.  And that's a large number.  So you run into these people and, you know, you're working with them.  And you have fun with it.  They're good people"), 90 (stating that he "just ignored [Guyton's jokes with alleged homosexual innuendo/humor] and ke[pt] on working" and that he "could handle that" because he had "worked around homosexuals before.  Not to say any of them did that in the past, but you ignore them")].  Accordingly, Owens has failed to show that Guyton's behavior was so severe and pervasive that it subjectively interfered with his ability to do his job or altered the terms and conditions of his employment, see id. (citation omitted), and Omni's motion for summary judgement is therefore due to be granted.

Furthermore, Owens must show that the employer "knew or should have known of the harassing conduct but failed to take prompt remedial action" in order to hold Omni liable under Title VII for sexual harassment based on a hostile work

---

[22] To the extent that Owens' affidavit submitted with his response to Omni's motion for summary judgment is an attempt to contradict this deposition testimony without explanation, it has been disregarded.  See Latimer v. Roaring Toyz, Inc., 601 F.3d 1224, 1237 (11th Cir. 2010) (citation omitted) ("A court may determine that an affidavit is a sham when it contradicts previous deposition testimony and the party submitting the affidavit does not give any valid explanation for the contradiction.").

environment. <u>Miller</u>, 277 F.3d at 1275, 1278. However, no evidence of record suggests that Omni failed to take prompt remedial action once it was aware of the alleged harassing conduct; in fact, the evidence before the Court shows that Omni immediately investigated Owens' complaints of sexual harassment when they were brought to management's attention in October of 2008, <u>see</u> [Doc 41, Def.'s Ex. 1; Doc. 39-4 ¶¶ 10-11 (interviewing witnesses to investigate complaints)], and that Omni took prompt remedial action despite finding that Owens' claims were unsubstantiated, <u>see</u> [<u>id.</u> ¶¶ 10-12; Doc. 41 at 92 (Kenny ensuring that Owens never again had Guyton as his banquet captain)]; <u>see also</u> [Doc. 41 at 91-92 (Owens admitting he had no further problems with Guyton after being removed from his banquet team)]. Accordingly, because the evidence does not establish either that Owens subjectively perceived the environment as abusive or that the alleged harassment was objectively severe and pervasive enough to alter the terms and conditions of Owens' employment, and because Owens cannot show that Omni did not promptly investigate and respond to harassment allegations, it is **RECOMMENDED** that Omni's motion for summary judgment be **GRANTED** with respect to Owens' hostile work environment sexual harassment claim.[23]

_____

[23] To the extent Omni asserts that the <u>Faragher/Ellerth</u> defense applies, <u>see</u> [Doc. 48 at 2-3], the Court need not evaluate the applicability of this affirmative defense since it finds that Omni is entitled to summary judgment because Owens has failed to present evidence establishing a *prima facie* case, <u>see Pearson's Pharmacy,</u>

**B.      Intentional Infliction of Emotion Distress**

To prevail on a claim of intentional infliction of emotional distress under Georgia law, Owens must show that (1) the conduct was extreme and outrageous; (2) Omni acted recklessly or intentionally; (3) the conduct caused emotional distress; and (4) the emotional distress was severe.  Trimble  v. Circuit City Stores, Inc., 469 S.E.2d 776, 778  (Ga. Ct. App. 1996); Bridges v. Winn-Dixie  Atlanta, Inc., 335 S.E.2d 445, 447-48 (Ga. Ct. App. 1985); see also Soloski, 600 F. Supp. 2d at 1371.  "The burden that a plaintiff must meet in order to prevail on this claim is a stringent one." Soloski, 600 F. Supp. 2d at 1371 (citation omitted).  Liability is only found where the defendant's conduct was "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerably in a civilized society."  Hajhossein v. City of Statesboro, No. 609CV048, 2010 WL 538209, at *3 (S.D. Ga. Feb. 12, 2010) (internal marks omitted) (quoting Kaiser v. Tara Ford, Inc. 546 S.E.2d 861, 868 (Ga. Ct. App. 2001)).  Omni asserts that Owens' intentional infliction of emotional distress claim fails because "the conduct lacks the requisite outrageousness to be recognized as a tort in Georgia."  [Doc. 39-2 at 25].

The Georgia Court of Appeals has stated that "[t]h[e severe and pervasive] standard for a federal sexual harassment claim is lower than the standard of

---

Inc. v. Express Scripts, Inc., No. 3:06-CV-73-WKW [WO], 2009 WL 3623395, at *8 n.15 (M.D. Ala. Oct. 29, 2009).

'outrageous' conduct required for intentional infliction of emotional distress."
MARTA v. Mosley, 634 S.E.2d 466, 492 n.7 (Ga. Ct. App. 2006) (citations omitted).

Accordingly, since the Court finds that Owens has failed to present evidence of harassment that is sufficiently severe and pervasive to support his claim of hostile work environment sexual harassment, he has *a fortiori* failed to present evidence of harassment that is sufficient to support a claim of intentional infliction of emotional distress under Georgia law. Therefore, it is **RECOMMENDED** that Omni's motion for summary judgment be **GRANTED** with respect to Owens' claim for intentional infliction of emotional distress.

## IV. CONCLUSION

For the foregoing reasons, the undersigned hereby **RECOMMENDS** that Omni's motion for summary judgment, [Doc. 39], be **GRANTED**.

The Clerk is **DIRECTED** to terminate this reference.

**IT IS SO RECOMMENDED**, this 27th day of March, 2012.

_Russell G. Vineyard_
RUSSELL G. VINEYARD
UNITED STATES MAGISTRATE JUDGE